**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **DEON S. GAYNOR,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION FILE NO.** |
| | : | **1:17-cv-03562-TWT-AJB** |
| **v.** | : | |
| | : | |
| **ATLANTA PUBLIC SCHOOLS,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S
NON-FINAL REPORT AND RECOMMENDATION**

This matter is presently before the Court on a motion to dismiss the second amended complaint, filed by Defendant Atlanta Public Schools pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [Doc. 16]. For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART and DENIED IN PART**.

## I.    *Legal Standard*

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the

AO 72A
(Rev.8/8
2)

sufficiency of a complaint, a court "must accept the facts pleaded as true and construe them in a light most favorable to [the] plaintiff[]." *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). At the same time, however, a court should not accept "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). And while a complaint need not contain detailed factual allegations, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are "not entitled to the assumption of truth."). Rather, plaintiffs are required to make factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (internal quotation marks omitted). The court also may dismiss a complaint pursuant to Rule 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause

2

of action.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## II.    Background

### A.    Facts[1]

Plaintiff Deon S. Gaynor began working for Defendant on March 7, 2012, as a classroom teacher at Carver High School for Technology.  [Doc. 7 ¶ 1].  In July 2012, Plaintiff transferred to North Atlanta High School, also to work for Defendant as a classroom teacher.  [*Id.*].

Plaintiff is legally blind and has limitations that prevented her from completing key functions of the teaching position, including reading student handwriting, monitoring student behavior, ensuring student safety in the classroom and during emergency evacuations, and reporting to off-campus locations without notice. [*Id.* ¶¶ 2-3].  Plaintiff first notified Defendant of these limitations on January 5, 2013, and requested the following accommodations of her disability: (1) use of assistive technology, (2) a classroom aide, and (3) all job-related documents in electronic format. [*Id.* ¶¶ 4-5].  On March 20, 2013, Defendant denied Plaintiff's request for a classroom

---

[1]    Pursuant to the standards set forth above, the undersigned presumes for the purposes of this Report and Recommendation ("R&R") that the facts set forth in the second amended complaint, [Doc. 7], are true.

3

aide, stating that it amounted to hiring a second employee to perform a primary essential function of the first employee's job, but it did approve Plaintiff's request for all job-related documents in electronic format and her request for assistive technology. [*Id.* ¶¶ 6-8]. Thereafter, however, the availability of assistive technology was inconsistent, and many job-related documents were not provided in electronic format. [*Id.* ¶¶ 7-8].

Plaintiff continued to have limitations in effectively completing the key functions of the teaching position, and working with the limitations caused by her disability created an extremely difficult and stressful working environment. [*Id.* ¶ 9]. On numerous occasions, Plaintiff was evaluated and rated below proficiency on classroom management. [*Id.*].

On January 15, 2014, February 19, 2014, and July 22, 2016, Plaintiff again notified Defendant of her limitations in her ability to effectively complete the key functions of her teaching position. [*Id.* ¶ 4]. On July 22, 2016, Plaintiff requested the following accommodations of her disability: (1) reduced class sizes, to limit the number of students Plaintiff monitored, and (2) additional planning time to enable Plaintiff to complete the administrative functions of the teaching position. [*Id.* ¶ 10]. On

4

September 23, 2016, Defendant denied Plaintiff's requests, stating that granting the requests would cause an unreasonable burden for the school.  [*Id.* ¶ 11].

On September 28, 2016, Plaintiff stated to Tannillie Hoover, Defendant's Assistant Director of Employee Relations, that her disability kept her from performing key functions of her teaching position.  [*Id.* ¶¶ 4, 12].  Ms. Hoover suggested that Plaintiff request alternative accommodations.  [*Id.* ¶ 12].

On November 26, 2016, Plaintiff again notified Defendant that her disability kept her from performing key functions of her teaching position.  [*Id.* ¶¶ 4, 13].  She also requested that Defendant accommodate her disability by reassigning her to any of the following three vacant positions: (1) media specialist, (2) social emotional learning specialist, or (3) international baccalaureate specialist.  [*Id.* ¶ 13].

On December 14, 2016, Defendant denied Plaintiff's request, stating that the media-specialist position required a media-specialist certificate, while Plaintiff had only a teaching certificate, and that the social-emotional-learning-specialist and international-baccalaureate-specialist positions required monitoring of students, which Plaintiff was unable to do because of the limitations caused by her disability.  [*Id.* ¶ 14]. At that time, however, Defendant employed others with teaching certificates in the media-specialist position, and the social-emotional-learning-specialist and

5

international-baccalaureate-specialist positions did not require monitoring student behavior. [*Id.* ¶¶ 15-16]. Plaintiff again reiterated to Ms. Hoover that her disability caused her to be unable to complete key functions of the teaching position and also presented a safety risk. [*Id.* ¶¶ 4, 18]. Ms. Hoover suggested that she and Plaintiff each research alternative accommodations. [*Id.* ¶ 18].

On January 30, 2017, Plaintiff informed Ms. Hoover of difficulties in conducting the research for alternative accommodations. [*Id.* ¶ 19]. Plaintiff also inquired about the status of Ms. Hoover's research. [*Id.*]. Ms. Hoover told Plaintiff that there was nothing else that Defendant could do to accommodate the limitations caused by Plaintiff's disability. [*Id.*]. Plaintiff again reiterated that her disability caused her to be unable to read student handwriting, monitor student behavior, ensure student safety in the classroom and during emergency situations, or report to off-campus locations without notice. [*Id.* ¶ 4].

Plaintiff's disability continued to cause her to have limitations in effectively completing the key functions of her teaching position. [*Id.* ¶ 20]. The work environment also remained stressful, and the safety risk to students continued. [*Id.*]. On March 27, 2017, two intruders sat in Plaintiff's classroom unidentified for over half the class period. [*Id.*].

AO 72A
(Rev.8/8
2)

On May 5, 2017, Plaintiff began psychiatric treatment for an anxiety disorder caused by job-related stress. [*Id.* ¶ 21]. Seeing no further opportunity for accommodation, experiencing job-related anxiety, and fearing for the safety of herself and her students, on June 1, 2017, Plaintiff resigned from Atlanta Public Schools. [*Id.* ¶ 22].

### B.    *Procedural History*

On June 8, 2017, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[2, 3]  [Doc. 16-2 at 2]. She checked

---

[2]    The EEOC assigned the matter EEOC Charge Number 410-2017-04401. [Doc. 7 at 14; Doc. 16-2 at 2].

[3]    In ruling on a Rule 12(b)(6) motion, the Court generally may not consider matters outside the pleadings without converting the motion to one for summary judgment under Rule 56; however, under the incorporation-by-reference doctrine, documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014); *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (applying in the motion-for-judgment-on-the-pleadings context the doctrine that allows documents outside the pleadings to be considered on a Rule 12(b)(6) motion to dismiss only when the documents are central to the claim and undisputed); *cf. Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming the district court's reliance on a contract that was not attached to the parties' complaint but was submitted by the defendants along with their motion to dismiss under Rule 12(b)(6), because the contract was central to the plaintiffs' complaint and its authenticity was not in dispute). Moreover, the incorporation doctrine allows the Court to take judicial notice of public records, and specifically, letters from the EEOC. *Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. Aug. 16, 2010) (affirming district court's

the box indicating disability discrimination and stated that the discrimination took place from July 22, 2016, through June 1, 2017. [*Id.*]. She also provided the following narrative:

> I.   I was hired by the above named employer on March 7, 2012. My last known position title was Teacher. I am a person with a disability, and at all points and times of my employment, my employer was aware of my disability. On or around July 22, 2016, I requested several medical accommodations. Specifically I requested reduced class sizes, in order to limit the range of students I would have to monitor. I also requested an additional . . . planning period, so that I could complete the administrative portions of my position. I also requested the use of a mobile technology cart to use during class periods, and assistance during emergency evacuations. On September 23, 2016, my request for a mobile technology cart and assistance during evacuations were granted, however, my other accommodations were denied. On or around November 26, 2016, I requested a transfer to one of three . . . positions that were vacant and available at the time. All three requests for transfer were denied. On June 1, 2017, I resigned.

---

consideration of exhibits attached to motion to dismiss, including EEOC right-to-sue letter, without converting motion to one for summary judgment); *Lambert v. Ala. Dep't of Youth Servs.*, 150 Fed. Appx. 990, 991-94 (11th Cir. Oct. 21, 2005) (considering an EEOC charge of discrimination attached to a motion to dismiss in affirming dismissal of Title VII claims). Plaintiff's charge of discrimination clearly is central to her claims, and she does not dispute the authenticity of the charge of discrimination attached to Defendant's motion to dismiss. [*See* Doc. 18 at 7 n.2]. Therefore, the undersigned concludes that the Court may consider the copy of Plaintiff's EEOC charge of discrimination that is attached to Defendant's motion to dismiss without converting Defendant's motion into one for summary judgment.

AO 72A
(Rev.8/8
2)

> II.   The reason given for my denial of transfer was because they were
> [sic] "unduly burdensome."
>
> III.   I believe I have been discriminated against because of my disability
> in violation of Title I of the Americans with Disabilities Act of
> 1990, as amended.

[*Id.*].   Plaintiff received a notice of right to sue on the charge on June 19, 2017.

[Doc. 7 at 5].

Plaintiff, proceeding pro se, filed this lawsuit on September 14, 2017.  [Doc. 1].

On September 27, 2017, she filed an amended complaint, [Doc. 3], and on

November 24, 2017, she filed a second amended complaint, in which she asserts claims

under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101

*et seq.*, for failure to accommodate her disability and unequal terms and conditions of

her employment, and demands financial compensation for back and future wages in the

amount of $96,624; damages for pain and suffering in the amount of $50,000; and

punitive damages in the amount of $100,000.  [Doc. 7].  On December 8, 2017, an

attorney filed a notice of appearance on Plaintiff's behalf.  [Doc. 9].

Defendant waived service, [Doc. 10], and on February 6, 2018, it filed the motion

to dismiss that is presently pending before the Court, [Doc. 16].  Plaintiff, through

counsel, filed a response to Defendant's motion to dismiss on February 20, 2018,

[Doc. 18], and Defendant filed a reply brief in support of its motion to dismiss on March 6, 2018, [Doc. 19].  Briefing having been completed, the undersigned now provides this R&R for the District Judge's consideration.

### III.   Discussion

The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) she is disabled; (2) she was a qualified individual at the relevant time, meaning that she could perform the essential functions of the job in question with or without reasonable accommodations; and (3) she was discriminated against because of her disability.  *McKane v. UBS Fin. Servs., Inc.*, 363 Fed. Appx. 679, 681 (11th Cir. Jan. 21, 2010); *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

"Under the ADA rubric of discrimination, an employer must make reasonable accommodations that allow a disabled individual to perform her job, unless that accommodation would cause an undue hardship."  *Standard v. A.B.E.L. Servs., Inc.*,

10

161 F.3d 1318, 1327 (11th Cir. 1998) (citing *Harris v. H & W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996), and 42 U.S.C. § 12112(b)(5)(A)).  A transfer to another position can constitute a "reasonable accommodation."  42 U.S.C. § 12111(9); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 398-99 (2002); *Smith-Jackson v. Chao*, Civ. Action File No. 1:15-cv-1688-WSD-JKL, 2017 WL 4546125, at *13-14 (N.D. Ga. July 5, 2017) (Larkins, M.J.) (citing *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *Ivey v. First Quality Retail Serv.*, 490 Fed. Appx. 281, 286 (11th Cir. Sept. 21, 2012)), *adopted at* 2017 WL 3575003, at *9 (N.D. Ga. Aug. 18, 2017) (Duffey, J.); *cf. Smith-Jackson*, 2017 WL 3575003 at *9 ("At the summary judgment stage, an employee meets her burden by showing an accommodation that 'seems reasonable on its face.' ").

Under the ADA, a plaintiff must exhaust her administrative remedies prior to filing a civil action.[4]  *See Rizo v. Ala. Dep't of Human Res.*, 228 Fed. Appx. 832, 835

---

[4]        The exhaustion requirements for Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and the ADA are the same. 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA); *see also McClure v. Oasis Outsourcing II, Inc.*, 674 Fed. Appx. 873, 874 (11th Cir. 2016) ("Plaintiffs proceeding under the ADA must comply with the same procedural requirements articulated in Title VII, and this includes the duty to exhaust administrative remedies.").  Thus, to the extent that the undersigned cites Title VII cases for exhaustion principles, that authority applies equally to claims asserted under the ADA.

11

(11th Cir. Jan. 31, 2007); *Wilkerson v. Grinnell Corp.*, 270 F. 3d 1314, 1317 (11th Cir. 2001).  In order to do so, she must file a charge of discrimination with the EEOC within 180 days of the challenged employment action.   *Rizo*, 228 Fed. Appx. at 835; *Wilkerson*, 270 F.3d at 1317; *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 657-58  (11th Cir. 1993); *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1230 (N.D. Ga. 2013) (Batten, J.) (further explaining that "unless ADA plaintiffs file a charge with the EEOC before the clock on a discrete discriminatory act expires, they will 'lose the ability to recover for it, regardless of whether the time-barred acts are closely related to acts alleged in a timely-filed charge' ") (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1179 (11th Cir. 2005)).

Defendant contends that the complaint is due to be dismissed on exhaustion grounds, arguing that Plaintiff did not timely file her charge with the EEOC, did not allege in her EEOC charge that she suffered any adverse action, and did not state in her EEOC charge the date when Defendant denied her request for reassignment or transfer to a vacant position.  [Doc. 16-1 at 5-12; Doc. 19 at 2-4].  Defendant also argues that Plaintiff cannot prevail on her claims because her allegations show that she was not a "qualified individual" with a disability, and that her claim for punitive damages must

AO 72A
(Rev.8/8
2)

be dismissed because punitive damages are not available against a government entity. [Doc. 16-1 at 12-15; Doc. 19 at 4-6].  The Court will consider the arguments in logical order.

### A.    *Abandoned Claims*

In response to Defendant's motion, Plaintiff states that she withdraws her claim for punitive damages.  [Doc. 18 at 1-2].  As to exhaustion, she defends the timeliness and sufficiency of her charge of discrimination only with regard to the denial of request for accommodation that was communicated to her on December 14, 2016, and her resignation on June 1, 2017, which she characterizes as constructive discharge. [*Id*. at 1, 11-12].  She explains that she cited other incidents in her complaint simply to "illuminate" Defendant's discriminatory practices.  [*Id*. at 2-3 & n.1].

When a party—particularly a represented party—fails to oppose an argument, " 'the Court deems such argument or claim abandoned.' "  *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1297 (N.D. Ga. 2015) (Jones, J.) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (Carnes, J.) (citing *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))); *accord Fils v. City of Atlanta*, 647 F.3d 1272, 1295 (11th Cir. 2011) (concurrence); *Armstead v. Allstate Prop. & Cas. Ins. Co.*, No. 1:14-cv-586-WSD, 2014 WL 6810727, at *10

13

(N.D. Ga. Dec. 3, 2014) (Duffey, J.); *Duncan v. CitiMortgage, Inc.*, Civ. Action File No. 1:13-CV-1493-TWT, 2014 WL 172228, at *9 (N.D. Ga. Jan. 15, 2014) (Thrash, J., *adopting* Brill, M.J.) (collecting cases); *see also* LR 7.1B, NDGa.   Plaintiff has expressly stated that she withdraws her claim for punitive damages, and she has failed to assert any opposition to Defendant's argument that claims accruing prior to December 14, 2016, should be dismissed as untimely.  [*See generally* Doc. 18].

Thus, the motion to dismiss those claims—in essence, all of the claims except for the denial of Plaintiff's request for reassignment and her putative constructive discharge—is due to be granted on abandonment grounds.

### B.    *Qualified Individual*

Defendant contends that Plaintiff cannot show that she was a "qualified individual" within the context of the ADA because she admitted that she had limitations that prevented her from completing key functions of her teaching position.  [Doc. 16-1 at 12-13; Doc. 19 at 5-6].   Within the context of the ADA, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."   42 U.S.C. § 12111(8); *see also Holly v. Clairson Indust., L.L.C.*, 492 F.3d 1247, 1256 (11th Cir. 2007) (citing 42 U.S.C. § 12111(8)).  For Plaintiff's

14

claims to be covered by the ADA, she needs to show that "[s]he was a 'qualified individual' at the relevant time, meaning that [s]he could perform the essential functions of the job in question with or without reasonable accommodations." *Lucas*, 257 F.3d at 1255; *see also Holly*, 492 F.3d at 1256 ("[A]n ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, that he can perform the essential functions of his job with a reasonable accommodation.") (punctuation omitted).

With regard to Defendant's challenge to Plaintiff's ability to show that she is a qualified individual with a disability, Plaintiff does not argue that she was qualified for the teaching position she actually held. [Doc. 18 at 12-14]. Indeed, Plaintiff admits repeatedly in her complaint that she was unable to perform the essential functions of her teaching position without an accommodation, [Doc. 7 at ¶¶ 3-4], and she does not argue that she timely challenged Defendant's refusal to grant her requests for accommodation to enable her to continue in her teaching position, [*see supra* Part III. A.]. Thus, Plaintiff's claims arising from any adverse actions taken against her with regard to her teaching position are due to be dismissed.

Defendant does not raise any argument that Plaintiff failed to plead facts sufficient to show that she was a qualified individual with regard to the alternative jobs

15

she desired, however, [Doc. 16-1 at 12-13; Doc. 19 at 5-6], thus waiving any argument it might have raised on that issue.[5]  *See Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 n.3 (11th Cir. Aug. 10, 2006) (per curiam) (finding that movant waived an issue by failing to elaborate on his argument or provide a citation to authority regarding the argument); *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (A court does not have "license to serve as de facto counsel for a party."); *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim); *Ward v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (court refuses to supply argument for party). Moreover, Plaintiff contends that she sufficiently alleged that she could perform the essential functions of the media-specialist, social-emotional-learning-specialist, and international-baccalaureate-specialist positions.  [Doc. 18 at 12-14].  Indeed, Plaintiff alleges in the complaint that although Defendant denied Plaintiff's request for reassignment on the basis that the media-specialist position required a media-specialist

---

[5]     Because transfer can be a reasonable accommodation, "[i]f [the plaintiff] identifies a position to which she thinks a transfer would have been a reasonable accommodation, then of course it matters whether [she] could perform that job." *Smith-Jackson*, 2017 WL 4546125 at *14.

certificate and the social-emotional-learning-specialist and international-baccalaureate-specialist positions required monitoring of students, [Doc. 7 ¶ 14], Defendant at that time employed others with teaching certificates to the media-specialist position, [*id*. ¶ 15], and the social-emotional-learning-specialist and international-baccalaureate-specialist positions did not require reading student handwriting, monitoring student behavior, or ensuring student safety in the classroom or during emergency evacuations, [*id*. ¶ 16]. Accepting Plaintiff's assertions as true, as the Court must upon a motion to dismiss, the undersigned finds that she has stated facts sufficient to plausibly state that she was a qualified individual with regard to the alternative positions that she sought.

### C.    *Exhaustion of Failure-to-Accommodate and Constructive-Discharge Claims*

Defendant argues that Plaintiff's charge of discrimination is untimely as to the denial of her request for reassignment to an alternative position.  [Doc. 16-1 at 8-12; Doc. 19 at 2-4].  It first contends that she complained about the denial of her request for reassignment on November 26, 2016, and her charge was not filed with the EEOC until June 8, 2017—194 days later.  [Doc. 16-1 at 9; Doc. 19 at 2].  It also acknowledges that Plaintiff stated in her complaint that Defendant denied her request for reassignment on

17

December 14, 2016, but it argues that because the date is absent from Plaintiff's charge, it could not have been considered or investigated by the EEOC.  [Doc. 16-1 at 12; Doc. 19 at 4].   Additionally, Defendant argues that Plaintiff's claim for reasonable accommodation by way of reassignment and her claim for constructive discharge must be dismissed because she did not allege the underlying adverse employer conduct in her charge of discrimination.  [Doc. 16-1 at 9-10].

The 180-day filing period "begins to run from the date the adverse employment decision is communicated to the employee."  *Barnes v. Hillhaven Rehab. & Convalescent Ctr.*, 686 F. Supp. 311, 312 (N.D. Ga. 1988) (citing *Chardon v. Fernandez*, 454 U.S. 6 (1981); *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)).  Plaintiff stated in her complaint that Defendant denied her request for reassignment on December 14, 2016.  [Doc. 7 ¶ 14].   Plaintiff filed her charge of discrimination 176 days later, on June 8, 2017.  [Doc. 16-2 at 2].  The undersigned therefore finds that Plaintiff's charge of discrimination was timely filed as to her claim for failure to accommodate via transfer.

It is true that Plaintiff's charge does not state the date that Defendant denied her request for reassignment, affirmatively state that the denial of the request for reassignment was a failure to provide a reasonable accommodation of Plaintiff's

18

disability, or affirmatively state that Defendant's adverse conduct caused her to resign her position.  [*See* Doc. 16-2 at 1].  It is also true that the ADA prohibits a plaintiff from alleging new acts of discrimination in the judicial complaint that were not raised in the EEOC charge.  *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279-80 (11th Cir. 2004).  A plaintiff may, however, bring claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint.  *Id.* at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).  In other words, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Gregory*, 355 F.3d at 1280.  "Courts are . . . 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],' " such that the EEOC charge is not to be "strictly interpreted."  *Gregory*, 355 F.3d at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)[6]).  Accordingly, "the proper inquiry" is whether the "complaint was like or related to, or grew out of, the allegations contained in her EEOC charge."  *Gregory, id.*  As a result, courts examine whether a plaintiff has

---

[6]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

19

"stated facts from which a reasonable EEOC investigator could have concluded" that she was complaining about the conduct alleged in her complaint. *Id.*

The Court is not persuaded that Plaintiff's charge failed to provide notice of her claim for failure to accommodate a reasonable request for reassignment. With regard to the failure-to-accommodate claim, Plaintiff stated in her charge of discrimination that she was disabled; her employer was aware that she was disabled; she requested several accommodations of her disability, only some of which were approved; on November 26, 2016, she further requested a transfer to one of the three vacant positions she had identified; her request for reassignment was denied as to all three positions; and the reason she was given for the denial of her request for reassignment was because the request was "unduly burdensome." [Doc. 16-2 at 2]. While Plaintiff does not expressly state that she requested the transfer as an accommodation of her disability, the context of her allegations regarding the request for reassignment—specifically, the fact that she made the request after other requests for accommodation were denied and the fact that the reason given for the denial was because the request was "unduly burdensome"—would lead a reasonable EEOC investigator to conclude that the request for a transfer was an alternative request for accommodation. Notably, even Defendant refers to the denial of Plaintiff's request for reassignment as a "denial[] of requested

20

accommodations." [Doc. 19 at 2]. As Plaintiff points out, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as an individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly*, 492 F.3d at 1262. The Court is also unpersuaded that Plaintiff's failure-to-accommodate claim is doomed by her failure to state in the charge that her request for transfer was denied was December 14, 2017. Obviously, specifying the date a charged act of discrimination took place is not a new allegation of discrimination but instead is simply a clarification that more clearly focuses Plaintiff's allegation of the denial of a reasonable accommodation. [*Compare* Doc. 7 ¶ 14 *with* Doc. 16-2 at 2]. Thus, it is the sort of detail that should be expected to arise during the investigation of Plaintiff's claim. *See Gregory*, 355 F.3d at 1280 (holding that the district court did not err in finding exhaustion where plaintiff set forth sufficient facts to trigger EEOC investigation of additional facts alleged in the complaint).

For similar reasons, the undersigned concludes that Plaintiff also provided sufficient notice of her constructive-discharge claim. It is true, as Defendant points out, that Plaintiff did not expressly allege in the charge of discrimination that Defendant's conduct made her working conditions so intolerable that she was forced to resign. [*See* Doc. 16-1 at 2]. However, the resignation allegation—like the allegations regarding

Defendant's denial of Plaintiff's request for reassignment—appears in the charge within a litany of allegations regarding Defendant's failure to accommodate Plaintiff's disabilities:  Plaintiff stated that she was disabled; her employer was aware that she was disabled; she requested several accommodations of her disability, only some of which were approved; on November 26, 2016, she further requested a transfer to one of the three vacant positions she had identified; her request for transfer was denied as to all three positions on the grounds that it was "unduly burdensome"; and several months later, she resigned.  [Doc. 16-2 at 2].  While it is certainly possible that Plaintiff resigned voluntarily, a reasonable EEOC investigation would have included an inquiry into the reasons for Plaintiff's resignation, including whether Defendant's failure to grant her a reasonable accommodation caused the conditions of her employment to become so unbearable as to lead to her constructive discharge.  *Cf. Gregory*, 355 F.3d at 1280 (concluding that where the plaintiff employee believed she was terminated as a result of race and gender discrimination, a reasonable EEOC investigation would have included an investigation into the reasons for the plaintiff's termination, including whether she was terminated for complaints about the alleged discrimination).

22

Accordingly, the undersigned concludes that Defendant has failed to show that Plaintiff's claim for failure to accommodate by way of transfer or her claim for constructive discharge is subject to dismissal on exhaustion grounds under Rule 12(b)(6).

**IV.   *Conclusion***

For the reasons discussed above, the undersigned **RECOMMENDS** that the motion to dismiss be **GRANTED IN PART and DENIED IN PART**, [Doc. 16]. Should the District Judge adopt this R&R in full, the only remaining claims will be that Defendant allegedly failed to provide Plaintiff a reasonable accommodation of her disability by reassigning her to one of the three available alternative positions she identified and requested and that the refusal to grant the reasonable accommodation ultimately resulted in Plaintiff's constructive discharge.  [Doc. 7 ¶¶ 13-16, 22].

**IT IS SO RECOMMENDED**, this the 27th day of April, 2018.


ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

23